FORET, Judge.
This case arises from a traffic accident in which a vehicle driven by defendant, Karen K. Hardy, collided with an automobile driven by plaintiff, Marilyn Malone. Plaintiff, Marilyn Malone, and her husband, Calvin Malone, filed suit against defendant Hardy and her automobile insurer, Shelter Insurance Company. Prior to trial, defendants admitted liability. The parties brought the question of damages before a jury which, in answer to special interrogatories, found that Marilyn Malone had sustained no injury as a result of the accident. In accordance with the jury’s verdict, the trial court rendered judgment for defendants. The trial court also assessed all costs of the proceedings against plaintiffs.
Plaintiffs have appealed and raised several issues:
(1) Whether defendants sufficiently authenticated photographs introduced into evidence at trial;
(2) Whether the jury’s finding that plaintiff, Marilyn Malone, sustained no injuries was clearly wrong; and,
(3) Whether the trial court erred in assessing all costs against plaintiffs.
FACTS
On the afternoon of November 4, 1983, plaintiff, Marilyn Malone, was driving a 1975 Ford Maverick on La. 3225 in the town of Tioga, in Rapides Parish. The traffic in front of plaintiff came to a stop as a vehicle traveling ahead of her waited to make a turn into a private driveway. Plaintiff came to a stop in her own lane, and while she was stopped waiting for the traffic in front of her to proceed, a vehicle driven by defendant, Karen K. Hardy, struck the right rear end of plaintiff’s automobile. Immediately following the collision, plaintiff got out of her car, walked over to defendant’s vehicle, and asked if defendant was all right. Plaintiff did not appear hurt and reported no injuries to the officer who investigated the accident. The accident caused only minor property damage to both vehicles.
Plaintiff testified that several hours following the accident she began experiencing pain and stiffness in her neck and developed a headache. According to her testimony, she took pain medication and, several days following the accident, called for an appointment at the Alexandria Orthopedic Clinic. She testified that she was told that *1102 the doctor would be unable to see her until December 30, 1983, almost two months after the accident occurred. Plaintiff testified that she continued to experience pain and stiffness and suffered from headaches. On December 30, 1983, plaintiff received medical attention for the first time when Dr. Douglas A. Waldman, an orthopedic surgeon, examined plaintiff. The examination uncovered no objective indications of injury, and x-rays of plaintiff’s neck and shoulder were normal. Nonetheless, based on plaintiff’s complaints of pain, Dr. Wald-man diagnosed plaintiff’s condition as cervical strain of the whiplash type.
Dr. Waldman referred plaintiff to a physical therapist, John Singletary. After several weeks of physical therapy, plaintiff reported that she was free of pain, and she was discharged by the physical therapist and Dr. Waldman. However, on February 21,1984, plaintiff returned to see Dr. Wald-man, once again complaining of neck pain and headaches. Dr. Waldman diagnosed a recurrence of cervical strain, prescribed an anti-inflammatory medication for plaintiff and again referred her to the physical therapist, John Singletary. While re-examining plaintiff, Singletary noticed a clicking sound when plaintiff opened her jaw and suspected that plaintiff’s headaches might be due to a tempero-mandibular joint problem. When plaintiff next saw Dr. Wald-man, she reported Singletary’s suspicions to the doctor, who then referred her to Dr. David Carlton, Jr., an oral surgeon. Dr. Carlton diagnosed plaintiff’s problem as bilateral tempero-mandibular joint meniscus displacement. Dr. Carlton referred plaintiff to a dentist, Dr. Edward M. White, for treatment of this problem. Dr. White’s treatment included fitting plaintiff with an occusal splint, a piece of plastic which goes over the upper teeth, and equilibration or grinding of the teeth to allow free movement of the jaw. On June 12, 1984, plaintiff reported to Dr. White that she was pain free. However, at trial, plaintiff testified that she had continued to suffer from headaches and, as of the time of trial, October 24, 1985, she was still having headaches two to three times a week, although they were not as severe as they had been immediately following the accident.
AUTHENTICATION OF PHOTOGRAPHS
Defendants introduced at trial several photographs which showed the automobile which plaintiff was driving at the time of the accident. Plaintiff contended that these photographs should not have been introduced since they were not sufficiently authenticated. Specifically, plaintiff maintains that it was not shown that the car, as displayed in the photographs, was in substantially the same condition as it was immediately following the accident because the car had been painted and repaired since the accident.
The trial court has some discretion in determining whether or not a photograph has been sufficiently authenticated. Usually, authenticating evidence must indicate that the photo is a substantially true and faithful representation of the place, person, or object it purports to portray. Nonetheless, even if a photo is not substantially correct, it may be admissible if it is sufficiently correct to be helpful and any inaccuracies are explained. Launey v. Travelers and General Insurance Company, 169 So.2d 757 (La.App. 3 Cir.1964).
Plaintiff does not contend that the automobile portrayed in the photographs was not, in fact, the automobile Mrs. Malone was driving at the time of the accident. There was testimony showing that the car in the photographs bore the same vehicle identification number as the car involved in the accident. Although there was evidence that the car had been repainted since the accident, there was testimony by at least one witness, Joe Reynolds, that the damages as portrayed in the photographs were exactly as they had been following the accident. Reynolds testified that, following the accident, he had inspected the damage inflicted on plaintiff’s automobile and that the photographs introduced into evidence faithfully represented the condition of plaintiff’s car at that time. That the car had been repainted did not substantially affect its condition since what was *1103 relevant was the damage that the accident had caused and not the automobile’s color. With Reynold’s testimony, the photographs were sufficiently authenticated, and the trial court’s ruling allowing defendants to place them into evidence was correct.
PLAINTIFF’S INJURIES
Since defendants had admitted liability prior to trial, the only question considered by the jury was the extent, if any, of plaintiff’s injuries and their connection to the accident. By way of special interrogatories, the jury found that plaintiff had not sustained any injury as a result of the accident. An appellate court will not disturb such a factual finding unless it can be said that it is clearly wrong.
Apparently, the underlying cause of plaintiff’s chronic headaches was a problem with her tempero-mandibular joint. This appears to have been the conclusion of Drs. Carlton and White, who testified on behalf of plaintiff. Neither of the two doctors, however, could say that the accident had caused plaintiff’s joint problem. Dr. Carlton admitted that in his experience a whiplash type injury could not result in the type of joint problem from which plaintiff suffered. He indicated that there was usually a history of the patient being struck on the jaw in those cases where the condition resulted from trauma. Dr. Carlton also testified that plaintiff’s pre-existing dental problems, such as missing teeth, most likely played some role in her problem. Dr. White testified that plaintiff’s problem could have been caused by any of several conditions which were not related to the accident such as broken restorations, missing teeth, and possible cavities. He also testified that, generally, where jaw problems are caused by accidents, there is an immediate' post-injury problem such as swelling or pain of the affected area. Plaintiff, however, did not suffer any swelling or pain in her jaw. Given all of the evidence, including the testimony of the two doctors who appeared on behalf of plaintiff, the jury could have concluded that plaintiff’s headaches were caused by a problem with her tempero-mandibular joint and that that problem was not causally connected to the accident.
As to the stiffness in her neck and the associated headaches from which plaintiff claimed to have suffered following the accident, the jury simply may have chosen not to believe plaintiff’s testimony in this regard. Although plaintiff testified that she was in a considerable amount of pain, particularly due to her headaches, she did not see a doctor for almost two months following the accident. Although Dr. Waldman did diagnose plaintiff’s condition as a cervical sprain, this diagnosis was based entirely upon plaintiff’s subjective complaints. The jury might have chosen not to believe plaintiff’s testimony regarding the pain she suffered following the accident. Alternately, it may have believed that any pain which plaintiff suffered was caused by her tempero-mandibular joint problem and that, as such, it was not causally related to the accident. The plaintiff in a personal injury suit has the burden of proving a causal relation between the accident and the injuries complained of. Richard v. Walgreen’s Louisiana Company, 476 So.2d 1150 (La.App. 3 Cir.1985). Given all the evidence, the jury could have reasonably concluded that plaintiff failed to carry her burden of proof. The jury was not clearly wrong in finding that plaintiff had suffered no injury as a result of the accident.
COURT COSTS
The trial court assessed all costs of the proceedings against the plaintiffs, Marilyn and Calvin Malone. Plaintiffs contend that it was error for the trial court to do so since defendants had admitted liability.
The assessment of court costs lies within the discretion of the trial court. LSA-C.C.P. art. 1920 provides:
“Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, *1104 or any part thereof, against any party, as it may consider equitable.”
In the present case, defendants were not cast in judgment. The only issue presented to the jury was whether or not Mrs. Malone had sustained injury as a result of the accident. As to this question, the jury found in favor of defendants. The trial court acted equitably in casting plaintiffs with all of the costs.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs, both in the trial court and on appeal, are assessed against plaintiffs-appellants.
AFFIRMED.