# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 11-853 consolidated with 11-854


**DWIGHT JOHNSON**

**VERSUS**

**JONATHAN SMITH, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2008-2596 C/W 2008-2860
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Shannon J. Gremillion, Judges.


**AFFIRMED.**

**Robert Lewis Bussey**
**Bussey, Lauve & Chadwick, L.L.C.**
**P. O. Box 307**
**Alexandria, LA 71309-0307**
**Telephone: (318) 449-1937**
**COUNSEL FOR:**
    **Defendants/Appellants - Acadian Ambulance Service, Inc., Discovery Property & Casualty Insurance Company, and Jonathan Smith**

**Brian M. Caubarreaux**
**Brian Caubarreaux & Associates**
**P. O. Box 129**
**Marksville, LA 71351**
**Telephone: (318) 253-0900**
**COUNSEL FOR:**
    **Plaintiff/Appellee - Dwight Johnson**

**THIBODEAUX, Chief Judge.**

The defendants, Jonathan Smith, Acadian Ambulance, and Discovery Property and Casualty Insurance Company, appeal from a judgment finding them solely liable for a parking lot collision with the plaintiffs, Dwight Johnson and Mark Claverie. We affirm.

## I.

## ISSUES

We must decide:

(1)    whether the trial court abused its discretion in excluding an exhibit of photographs from the evidence;

(2)    whether the trial court abused its discretion in assessing all of the fault for the accident against the driver of the ambulance;

(3)    whether the trial court abused its discretion in refusing to accord expert status to the investigating officer and in excluding a traffic citation from evidence; and,

(4)    whether the trial court abused its discretion in awarding Mr. Johnson $6,500.00 in lost wages.

## II.

## FACTS AND PROCEDURAL HISTORY

On September 4, 2008, shortly after Hurricane Gustav struck Louisiana, Dwight Johnson was driving his Ford Expedition in the drive-through exit lane of the Marksville Taco Bell restaurant when Jonathan Smith, driving an Acadian Ambulance, pulled from his position at the ordering box and collided with Johnson. The front grill of the ambulance struck the rear quarter panel of the Expedition resulting in $4,200.00 in property damage to Mr. Johnson's vehicle.

Mr. Johnson began experiencing pain in his neck and back and was seen five hours after the accident at Avoyelles Hospital in Marksville. The following day, he went to Rapides Regional Medical Center in Alexandria. Mr. Johnson was

subsequently treated conservatively for neck, back, and leg pain and was taken off work for several months by his physician, Dr. Bryan McCann. Mr. Johnson's passenger, Mark Claverie, was also injured, and each plaintiff filed a separate suit. The suits were consolidated for trial.

Following a bench trial on the merits, the trial court ruled in favor of Dwight Johnson and Mark Claverie, assessing 100 percent of the fault against the defendants. The court awarded Mr. Johnson $25,000.00 in general damages, plus medical expenses, costs, and lost wages of $6,500.00. The trial court awarded Mr. Claverie $15,000.00 in general damages, plus medical expenses and costs.

The defendants appeal the trial court's allocation of fault, the award of lost wages to Mr. Johnson, and the trial court's exclusion of an exhibit of photographs. For the following reasons, we affirm the trial court's judgment on all issues appealed. The suits have been consolidated for appeal as well, with Dwight Johnson, No. 11-853 herein, consolidated with No. 11-854 of Mark Claverie.

III.

**STANDARD OF REVIEW**

An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A reviewing court must keep in mind that if a trial court's findings are reasonable based upon the entire record and evidence, an appellate court may not reverse those findings even if it is convinced that had it been sitting as trier of fact it would have weighed that evidence differently. *Housely v. Cerise*, 579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate

2

functions between the respective courts. *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973).

## IV.

## <u>LAW AND DISCUSSION</u>

### *Exhibit A-2*

The defendants contend that the trial court erred in excluding Exhibit A-2 from the admissible evidence. Exhibit A-2 contains three photographs of the plaintiff's Expedition and the defendant's ambulance, ostensibly in their post-impact positions in the Taco Bell drive-through lanes after the accident. While the defendants argue that the photographs were authenticated by Officer Carl Edward Harvey, of the Marksville Police Department, as photographs taken *by* him, Officer Harvey admitted on cross examination that *he* might be depicted *in* one of the pictures standing next to his police vehicle. He further admitted that he could not say for certain that he took the actual pictures proffered into evidence. The defendants cite *Rutledge v. Brookshire Grocery Co.*, 523 So.2d 914 (La.App. 3 Cir.), *writ denied*, 531 So.2d 269 (La.1988), and similar cases for the proposition that a photograph need only be *sufficiently* correct to be admissible. The court in *Rutledge* stated as follows:

> The trial court may use its discretion in determining if a photograph has been sufficiently authenticated. Usually authenticating evidence must show that the photograph is a substantially true and faithful representation of the place, person, or object it purports to portray. Even if the photograph is not substantially correct, it may be admissible if it is sufficiently correct to be helpful and any inaccuracies are explained. *Malone v. Shelter Ins. Co.,* 503 So.2d 1100 (La.App.3d Cir.), *writ denied*, 505 So.2d 1143 (La.1987).

*Rutledge*, 523 So.2d at 919.

Here, the trial court studied eight other photo-exhibits of the accident site, taken at a later date when the Taco Bell drive-through lanes were empty. The

3

pictures show two unmarked lanes forming a horseshoe curve to the left around the Taco Bell. The ordering box had been removed, but its location was clearly demarked by a short post and small hedge inside the curb of the left lane. Various witnesses had marked the exhibits with the locations of the ambulance and the Expedition upon impact. After questioning Officer Harvey, the trial court determined that he could not have been standing where he testified he stood to photograph the order box, whose location was not seen or even indicated in Exhibit A-2. Officer Harvey further testified that A-2 did not show the actual point of impact, and he could not say for certain that the vehicles had not been moved prior to his arrival at the scene. No accident report was filed, to which the photographs could have been attached, and the true origin of the photographs is not known.

We further note that the photographs themselves do not appear helpful, except perhaps to the plaintiffs. They depict the Expedition clearly in front of the ambulance with the front end of the ambulance in close proximity to the back end of the Expedition; they were taken too close to the vehicles to show the curb or the order box area, but they suggest a fairly wide space between the ambulance and the curb. The pictures were taken at night with bright bursts of reflected light on and between the vehicles; and, they are fuzzy with very poor detail. As the plaintiff, Mr. Claverie, points out, the identity of the two vehicles involved, which is all that is fairly represented in the photos, was never in question. Under *Rutledge*, we find no abuse of discretion on the part of the trial court in excluding Exhibit A-2 from the admissible evidence.

### *Allocation of Fault*

This accident occurred late at night after a hurricane had left most restaurants closed. Mr. Johnson testified that he was in the ordering lane, about six cars from the ordering box, when a Taco Bell employee walked from the store to his

4

vehicle first, as it was nearest the door, and announced that the restaurant was out of food and was turning out the lights. Mr. Johnson pulled into the exit lane on his right and passed the ordering vehicles as he had done many times before. Mr. Johnson and Mr. Claverie testified that the ambulance was the first vehicle in line; that it was stopped at the ordering box; and, that there was enough room to go around it. After Mr. Johnson pulled in front of the ambulance in order to exit the Taco Bell lot, Mr. Smith released his brake and moved forward, striking Mr. Johnson's Expedition in the rear. Mr. Johnson testified that his vehicle was pushed twice, shifting its front end to the left and its rear end to the right. Mr. Claverie testified that the ambulance pulled forward at least two feet and that the Expedition had passed three fourths of the way in front of it at the time of impact.

The defendants contend that the trial court erred in allocating all of the fault to the ambulance driver, Jonathan Smith. They assert that the plaintiff, Mr. Johnson, had the greater burden of care because he was the one who was changing lanes. The defendants cite La.R.S. 32:74 from the Highway Regulatory Act, at La.R.S. 32:1, et seq, which they argue should be applied in allocating fault to the plaintiff, Mr. Johnson.[1] We disagree.

Where a vehicular collision occurs in a private parking lot and not on a public thoroughfare, the general tort law of Louisiana is applicable, and the Highway Regulatory Act, though persuasive, is not controlling. *Gatheright v. State Farm Mut. Auto. Ins. Co.*, 352 So.2d 428, (La.App. 3 Cir. 1977). In *Gatheright*, we set a standard of *due caution* for all motorists proceeding in a parking lot. There, under the facts of that case, we found that the plaintiff was 100% at fault for traveling too fast and not

---

[1]The statute cited by the defendants provides that a vehicle may overtake and pass another on the right if the other vehicle is making or about to make a left turn; if the street or highway is one-way, free from obstructions, and wide enough for two or more moving vehicles; if the highway is multi-laned; if conditions permit such movement in safety, without leaving the pavement or main traveled portion of the highway. La.R.S. 32:74. To the extent that this law is persuasive, the record provides a factual basis for concluding that Mr. Johnson's movements were not in violation of this statute.

applying her brakes, while the defendant had observed her duty of due caution in proceeding through the parking lot and was in no degree negligent for the accident.

In *Chenevert v. Wal-Mart Stores, Inc.*, 02-1075 (La.App. 3 Cir. 2/5/03), 838 So.2d 922, a panel of this court found that both drivers caused a parking lot accident where one driver was traveling at an excessive speed, and a store employee drove a forklift from behind a storage box into the driver's path. Citing *Gatheright*, we found that a motorist can breach his duty of due caution if he travels at a fast pace in a parking lot with other traffic present and with his vision obstructed by parked cars and other objects. Hence, in *Chenevert*, where both the fork lift operator and the motorist were in motion, and both had obstructed views because of the large storage boxes, both breached the duty of due caution.

Conversely, here, Mr. Johnson testified that he saw the ambulance and that it was stopped, with its brake lights still on, when he started past it to exit the Taco Bell lot. Mr. Johnson was driving a Ford Expedition, a large, red SUV with a high profile, allowing him to see both lanes of the drive-through, and allowing him to be seen by the ambulance driver. There is no testimony that Mr. Johnson's view, or the ambulance driver's view, was obstructed. Nor is there any testimony that Mr. Johnson was speeding. Here, the ambulance driver, Mr. Smith, testified that he was looking to his left, not to his right, or up ahead, when he took his foot off of his brake and moved forward. Smith testified that he felt, not saw, the impact when his front grill made contact with the back of Johnson's Expedition.

The trial court noted that the impact to Mr. Johnson's vehicle was to "the rear quarter panel area of the plaintiff vehicle. Not the front or middle but the rear. And so it gives the driver of the defendant vehicle so many opportunities to see the plaintiff vehicle to his right or entering ahead and he [does] not." Mr. Johnson argues that, to the extent that the Highway Regulatory Act is persuasive, the facts of this case support the conclusion that the ambulance driver, Mr. Smith, violated La.R.S. 32:103

6

when he released his brakes and moved forward without seeing Mr. Johnson. More specifically, Section 103 provides: "No person shall move a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety." Of the statutes cited, this one is the most persuasive, in that it does not involve intersections or multidirectional traffic, and it addresses the present facts and findings.

Next, the defendants contend that the trial court misapplied the theory of preemption and in so doing committed reversible error. We disagree. The record reveals that, while the term "preemption" was loosely used by the trial court, only after being suggested by the defendant, it was used by the trial court for explanatory reasons, not as the legal term of art it has come to represent. More specifically, the doctrine of preemption may allow a non-favored motorist to recover if he crossed an intersection or entered a favored street only after determining that he had a reasonable opportunity to do so safely without endangering or impeding the approaching vehicles on the favored street. *See Cormier v. Albear*, 99-1206 (La.App. 3 Cir. 2/2/00), 758 So.2d 250. The doctrine is based upon various statutes of the Highway Regulatory Act[2] governing intersections and is not applicable to the facts in this case.

The trial court found that seventy-five percent of Mr. Johnson's vehicle was in front of the ambulance and had "protruded and assumed or taken that lane from the defendant vehicle" at the time of impact. The trial court appears to have referred to the positions of the vehicles in the unmarked lanes to emphasize that Mr. Johnson was hit from behind and that he was so far in front of Mr. Smith's ambulance at the point of impact that Mr. Smith would have seen him if Mr. Smith had been vigilant.

---

[2]*See* La.R.S.32:232, on traffic control signals and semaphores, which purports to protect motorists who preempt at intersections. *Higgins v. Johnson*, 349 So.2d 918 (La.App. 1 Cir.), *writs denied*, 351 So.2d 161 and 162 (La.1977); *See Ernst v. O'Bannion*, 278 So.2d 830 (La.App. 3 Cir.), *writ denied*, 281 So.2d 749 (La.1973), referencing La.R.S. 32:121 (at intersection, vehicle on left generally yields to vehicle on right).

Even applying the doctrine for persuasive purposes, the court's reasoning is sound, where Mr. Johnson moved in front of the ambulance only after determining that it was stopped with its brake lights engaged. Mr. Johnson, therefore, undertook a proper lookout (*see Semien v. State Farm Auto. Ins. Co.*, 398 So.2d 161 (La.App. 3 Cir. 1981)), and had a bona fide belief that he could proceed safely (*see O'Bannion*, 278 So.2d 830). *See also McMillan v. State Farm Mut. Auto. Ins. Co.*, 356 So.2d 1368 (La.1978) (preemption by vehicle was clear where the point of impact was to the rear of the left door in the left quarter panel).

The defendants also contend that the trial court should have used the lane changing doctrine. Again, the lane changing doctrine is based upon various statutes of the Highway Regulatory Act[3] which is not controlling in this case. In general, it requires that a person moving from one lane to another must do so with safety. Here, the record supports a determination that Mr. Johnson proceeded with due caution and that Mr. Smith did not.

The defendants further argue that the trial court should have applied the presumption of negligence doctrine, which arises when a driver leaves his own lane of traffic and strikes another vehicle. *See Shephard on Behalf of Shepard v. Scheeler*, 96-1690 (La. 10/21/97), 701 So.2d 1308. We again disagree. Here, the record amply supports the determination that Mr. Smith struck Mr. Johnson, and that this doctrine is inapplicable.[4]

---

[3]The driver on a road laned for traffic must not move out of his lane until he has first ascertained that such movement can be made with safety. La.R.S. 32:79. A motorist changing lanes may not turn his vehicle from a direct course or move right or left unless and until such movement can be made with reasonable safety. La.R.S. 32:104(A). Signals must be used to indicate an intention to change lanes. La.R.S. 32:104(D).

[4]The presumption of negligence doctrine is reserved for exceptional cases, and it arises "when a *defendant* motorist leaves his own traffic lane and strikes another vehicle. In such a case, the burden of proof on such a *defendant* motorist is to show that he was not guilty of any dereliction, however slight." *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252, p. 6 (La. 2/20/95), 650 So.2d 742, 746 (emphasis added) (citations omitted).

The trial court found that the ambulance driver was solely at fault for the accident. The trier of fact is afforded great deference in its allocation of fault. Therefore, even if a reviewing court might apportion fault differently, the judgment of the trial court should be affirmed unless manifestly erroneous or clearly wrong. *See Dupree v. City of New Orleans*, 99-3651 (La. 8/31/00), 765 So.2d 1002. We find no manifest error in the trial court's allocation of fault.

### *Expert Testimony and Citation*

The defendants contend that the trial court abused its discretion in denying expert status to the investigating officer and in excluding his traffic citation from the admissible evidence. A trial court is accorded broad discretion in determining whether expert testimony should be admissible and who should or should not be permitted to testify as an expert. *Cheairs v. State ex rel. Dept. of Transp. and Dev.*, 03-680, p. 6 (La. 12/3/03), 861 So.2d 536, 541 (citing 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[02] (1981). We find no abuse of discretion by the trial court.

Officer Carl Harvey testified that he had been with the Marksville Police Department for approximately thirty years, beginning as a patrolman, and that he had achieved the rank of Captain about ten years prior to trial. He stated that he had given trial testimony in court but that he had never had formal training in reconstructing accidents; had never been tendered or certified as a crash reconstructionist; had never performed an accident reconstruction; and had never tendered as an expert in accident investigation.

Officer Harvey specifically stated that he did not have the qualifications to reconstruct an accident. He testified that he had gone through an eight-week training period at Alexandria Police Academy thirty years ago, which included accident investigation. He further stated that he did not go to seminars or courses on a

periodic basis to stay current with accident investigation. Officer Harvey further testified that he had attended one course in the last five years when the Department of Public Safety and Corrections changed the accident reporting form and required officers to attend a course on the new form. The trial court questioned Officer Harvey and determined that he had not taken any measurements at the scene of the accident and had done nothing more than take the statements of the parties, assess the damage, and issue a citation to Mr. Johnson for careless operation of a vehicle. Thus, the court declined the defendant's tender of Officer Harvey as an expert.

Additionally, the traffic citation was properly excluded by the trial court from the admissible evidence. It has long been held that the mere charge of a traffic violation is inadmissible in a civil proceeding to prove negligence because citations are often untrustworthy; they are merely the opinion of the officer; their payment is often the result of expediency or compromise; and they erode the rule against hearsay. *See Ruthardt v. Tennant*, 215 So.2d 805, 252 La. 1041 (La.1968). This is particularly true where there is no court appearance and no written plea of guilty. *See Maricle v. Liberty Mut. Ins. Co.*, 04-1149 (La.App. 3 Cir. 3/2/05), 898 So.2d 565. Here, the record reveals that the citation itself was dismissed; the Marksville City Police Department did no formal investigation of the accident; nor did it file an accident report. Accordingly, the trial court is affirmed on this issue as well.

### *Economic Damages*

The defendants further contend that the trial court erred in awarding past lost wages to Mr. Johnson in the amount of $6,500.00.

> To recover for actual wage loss, a plaintiff must prove the length of time missed from work due to the tort and must prove past lost earnings. *Craven v. Universal Life Ins. Co.*, 95-1168 (La.App. 3 Cir. 3/6/96); 670 So.2d 1358, *writ denied*, 96-1332 (La.9/27/96); 679 So.2d 1355. Past lost earnings are susceptible of mathematical calculation from evidence offered at trial. *Id.* An award for past lost earnings requires evidence as reasonably

> establishes the claim, which may consist of the plaintiff's own testimony. *Id.* An award for past lost earnings is not subject to the much-discretion rule when it is susceptible of mathematical calculation from documentary proof. *Mormon v. Stine, Inc.*, 95-615 (La.App. 3 Cir. 11/2/95); 664 So.2d 600. The plaintiff's uncorroborated, self-serving testimony will not be sufficient to support an award if it is shown that corroborative evidence was available and was not produced. *Id.*

*Mathews v. Dousay*, 96-858, p. 15 (La.App. 3 Cir. 1/15/97), 689 So.2d 503, 513.

Mr. Johnson testified that, at the time of the accident, he was employed with Brudd Construction doing drainage work on the highways. Mr. Johnson's medical records from Avoyelles Hospital in Marksville and Rapides Regional Medical Center in Alexandria both list "Broudd" Construction as the patient's employer. Mr. Johnson testified that he made $8.00 per hour with the construction company and averaged forty hours a week in regular time and ten hours per week in overtime. Therefore, Mr. Johnson was earning approximately $320.00 per week, plus overtime, before the accident on September 4, 2008. He also stated that he was taken off work by Dr. Bryan McCann, and when he tried to return to Brudd Construction, he was told that he had been replaced.

Dr. McCann's records and deposition testimony indicate that he took Mr. Johnson off work on his first visit on September 8, 2008, and that he continued his off work status through the first week of January 2009. Dr. McCann further testified that the accident with Acadian Ambulance on September 4, 2008, was the cause of Mr. Johnson's neck and back injuries. The record, therefore, reveals that Mr. Johnson has shown an inability to work for approximately twenty-one weeks due to the tort. The trial court awarded Mr. Johnson $6,500.00 for past lost wages, which is consistent with twenty and one-third weeks at the weekly wage of $320.00 to which Mr. Johnson testified, without considering any overtime.

While the defendant complains that no check stubs or tax returns were offered at trial, the defendant did not show that such documents were available but not produced, pursuant to *Mathews* quoted above. Nor does the record indicate that the defendant filed a motion to compel such documents. Accordingly, the trial court's judgment is affirmed on the award of past lost wages.

V.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court is affirmed on all issues. Costs of this appeal are assessed to the defendants, Jonathan Smith, Acadian Ambulance, and Discovery Property and Casualty Insurance Company.

**AFFIRMED**.